UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YVONNE BAILEY-LYNCH                          1:20-CV-01610 (JLS-MJR)

              Plaintiff,                        REPORT AND
                                             RECOMMENDATION
    v.

DOLLAR TREE STORES, INC.,

              Defendant.
_____

## <u>INTRODUCTION</u>

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr., for hearing and reporting on dispositive motions for consideration by the District Court. (Dkt. No. 11) Before the Court is defendant's motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 24) For the following reasons, it is recommended that defendant's motion to dismiss be granted in part and denied in part.

## <u>BACKGROUND</u>

### <u>*Plaintiff's First Complaint*</u>

*Pro se* plaintiff Yvonne Bailey-Lynch commenced this action against defendant Dollar Tree Stores Inc. on November 2, 2020, alleging numerous employment discrimination claims. (Dkt. No. 1) On April 29, 2021, defendant moved to dismiss the complaint for failure to state a claim on which relief could be granted. (Dkt. 10) This Court issued a Report, Recommendation and Order on January 28, 2022, recommending that

the District Court grant defendant's motion to dismiss, without prejudice, and allow plaintiff leave to file an amended complaint. (Dkt. No. 18)

On February 14, 2022, plaintiff filed an amended complaint. (Dkt. No. 20) The District Court then adopted this Court's Report and Recommendation granting the motion to dismiss the original complaint on May 16, 2022. (Dkt. No. 23) The District Court gave plaintiff the option of relying on the February 14, 2022 amended complaint as her amended complaint in this case, or re-submitting a new amended complaint by June 15, 2022. (*Id*.) Plaintiff did not re-submit a new pleading, and the February 14, 2022 amended complaint became the operative complaint in this case. (Dkt. No. 20) On July 5, 2022, defendant filed the instant motion to dismiss the amended complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief could be granted. (Dkt. No. 24) Plaintiff filed a response in opposition to the motion to dismiss on August 5, 2022 (Dkt. No. 26) and defendant filed a reply on August 18, 2022 (Dkt. No. 27).

### *Plaintiff's Amended Complaint*

In the amended complaint, plaintiff indicates that she is asserting claims under Title VII; the Age Discrimination in Employment Act; and the Americans with Disabilities Act. (Dkt. No. 20, pg. 2) Plaintiff states that she a Black female who began employment with defendant Dollar Tree Stores in October of 2018. (*Id*. at pgs. 1-2, 5) Plaintiff was 59 years old at the time of her hire by defendant. (*Id*.) Plaintiff alleges that in April of 2019, she attempted to give "Laury", the "Head Manager" for Dollar Tree, a doctor's report from the Erie County Medical Center Ear Nose and Throat Clinic stating that she was "allergic to chemicals." (*Id*. at pgs. 2-3) However, Head Manager Laury refused to provide plaintiff

with "disability information." (*Id*.) Plaintiff alleges that she "now receives Disability Insurance due to this Disability [that] defendant refused to accept." (*Id*. at pg. 3)

Plaintiff further alleges that, also in April of 2019, she inquired about an assistant manager position. (*Id*. at pg. 4) Plaintiff was informed by "Chris", a "manager of [the] same Dollar Tree Store," that she could apply for whatever position she wanted. (*Id*.) Plaintiff alleges that she was qualified for the first position at Dollar General for which she was initially hired and that she was also qualified for the "second" position of assistant manager. (*Id*. at pg. 8) Plaintiff states that she has a "task" high school diploma; over 86 college credits; and a "business license." (*Id*. at pgs. 3-4) Plaintiff also indicates that she has 15 years of experience working in retail. (*Id*. at pg. 3) Plaintiff alleges that in spite of these qualifications, defendant refused to employ her in the assistant manager position. (*Id*. at pg. 3) She alleges that when she asked Head Manager Laury about the position, he "refused [her] inquiries about the assistant manager position due to race discrimination." (*Id*. at pg. 8)

The amended complaint also states that "Barb" and "Sue" were Caucasian females employed by Dollar Tree as associates. (*Id*. at pg. 4) Plaintiff alleges that Barb and Sue "felt they could order plaintiff to do their work and her own work." (*Id*. at pg. 5) Plaintiff also alleges "Associate cashier white female retiree Barb was able to sit down at the register…Plaintiff Black female good health, 59 years old…not old enough for retirement…could not sit." (*Id*. at pg. 5)

Plaintiff alleges that she suffered sexual harassment when "Theresa, Assistant Manager" threatened plaintiff with "assault comments" and stated that "her partner is in the SWAT team." (*Id*. at pg. 6) Plaintiff alleges that Theresa brought her partner into the

Dollar Tree store and pointed out plaintiff. (*Id*.) Plaintiff further alleges that defendant discriminated against her on the basis of national origin by "setting plaintiff up, having money taken from vault in office, by strange guy climbing into office, [and] then blaming the money being missing from plaintiff drawer." (*Id*.)

## **DISCUSSION**

In order to state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). When reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense[.]" *Bell Atl. Corp*., 550 U.S. at 679.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise

the strongest arguments that they suggest."). However, even a *pro se* complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'." *Ashcroft*, 556 U.S. at 678; *quoting Bell Atl. Corp.*, 550 U.S. at 570.

### *Plaintiff's Title VII Claims*

To state a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), a plaintiff must "allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015); *citing* 42 U.S.C. §2000e—2(a)(1). A plaintiff can establish this "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Jones v. Target Corp.*, 15-CV-4672, 2016 WL 50779, at *2 (E.D.N.Y. Jan. 4, 2016); *quoting Vega*, 801 F.3d at 86-87. Absent direct evidence of discrimination, Title VII claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, a plaintiff bears the burden of establishing a *prima facie* case of discrimination." *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 764 (E.D.N.Y. 2018). To satisfy this burden, a plaintiff must show "(1) that she was within the protected [class], (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.*; *quoting Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). This burden is "not a heavy one." *Id.*; *accord Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (A plaintiff's

burden at the *prima facie* stage to offer evidence of circumstances giving rise to an inference of discrimination is "minimal" and "*de minimis*.").

The Court has interpreted plaintiff's *pro se* complaint liberally, to raise the strongest arguments it suggests, and finds that plaintiff has stated, albeit minimally, a plausible claim of race discrimination. The amended complaint alleges that plaintiff is Black and therefore is a member of a protected class. Plaintiff alleges that she was qualified for the initial position she was hired for by defendant Dollar General. Plaintiff further alleges that, during her employment with Dollar General, she inquired about an assistant manager position for which she was also qualified. As to the third element of her *prima facie* case, plaintiff alleges that, despite these qualifications, defendant "refused her inquiries" about the position and "refused to employ her as an assistant manager." To be sure, the amended complaint is not a model of clarity. However, at this stage of the proceeding, the Court is required to both consider plaintiff's allegations in a commonsense manner and to draw all reasonable inferences in favor of plaintiff. With these principals in mind, the Court finds that plaintiff has sufficiently alleged that defendant failed to promote her to the position of assistant manager and, consequently, that she suffered an adverse employment action. *See Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2001) (noting that failure to promote is considered an adverse employment action under Title VII).

Defendant argues that plaintiff fails to state a failure to promote claim because she does not specifically allege that she applied for the assistant manager position. Indeed, to give plausible support to a failure to promote claim at the motion to dismiss stage, a plaintiff must ordinarily "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she

or he generally requested promotion." *Brown v. Coach Stores*, Inc., 163 F.3d 706, 710 (2d Cir. 1998). However, "a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." *Thelwell v. City of New York*, 733 F. App'x 561, 563 (2d Cir. 2018); *accord Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993).

Here, plaintiff's allegations are not limited to a general request for promotion. Instead, she alleges that she inquired about the assistant manager position, a specific job for which she was qualified. Plaintiff further alleges that Head Manager Laury dismissed her inquiries and refused to consider her for the position on account of her race. Construing these statements in a light most favorable to plaintiff and drawing all inferences in her favor, plaintiff alleges that she was precluded or prevented from pursuing the assistant manager position on account of discrimination, and that further or formal application by plaintiff for the position would have been futile. *See Barrett v. Forest Labs, Inc.*, 39 F. Supp. 3d 407, 441-43 (S.D.N.Y. 2014) (complaints sufficient to survive motions to dismiss where plaintiffs plausibly alleged that they were qualified for particular openings, "and allege[d] either that they applied for that position and were rejected, or that they would have applied for the position but were precluded from doing so"); *Shah v. Tunxis Cmty. College*, 3:14-CV-00712, 2015 U.S. Dist. LEXIS 90832, *16-17 (S.D.N.Y. D. Conn. July 14, 2015) (finding that plaintiff sufficiently alleged a failure to promote claim where plaintiff claimed that he verbally expressed interest in a position and was told that

he would not be considered).[1]

The Court acknowledges that plaintiff's allegations regarding her attempts to apply for the assistant manager position are somewhat vague and conclusory. As a result, the Court's decision to allow this claim to proceed was a close one. Indeed, in order to establish a *prima facie* case of failure to promote under Title VII, plaintiff will need to supply specific evidence, beyond the allegations in the amended complaint, that she was precluded or prevented from applying for the assistant manager position, or that her formal application for the position would have been futile. However, the case remains in the motion to dismiss stage. At this juncture, plaintiff does not need to prove every element of the *prima facie* case. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Instead, she must allege facts that give "plausible support to the reduced requirements" of the *prima facie* case. *Id*.; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) ("[T]he *prima facie* case is an evidentiary standard, and not a pleading requirement" and therefore a plaintiff need not allege a *prima facie* case to survive a motion to dismiss the discrimination claim.). Moreover, the Court is mindful that plaintiff's *pro se* complaint must be judged by less stringent standards than those applied to a pleading drafted by an attorney.

As to the fourth and final element of plaintiff's *prima facie* claim, "[a]n inference of discrimination can arise from circumstances including, but not limited to…invidious comments about others in the employee's protected group; or the more favorable

---

[1] Defendant points to the amended complaint's allegations that when plaintiff asked Chris, another manager at Dollar Tree, about the assistant manager position, Chris indicated that she could apply for any position she wanted. However, plaintiff further alleges that when she then asked Head Manager Laury about the position, he refused her inquiries. These allegations present a question of fact as to whether the application process was available to plaintiff.

treatment of employees not in the protected group; or the sequence of events leading to the [complained of] action." *Littlejohn*, 795 F.3d at 312; *accord Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). Further, Second Circuit has expressly instructed that, to survive a motion to dismiss, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to *the ultimate question* of whether the adverse employment action was attributable to discrimination [but] must "only give plausible support of *a minimal inference* of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. The Second Circuit also instructs that, in making this plausibility determination, courts must be "mindful of the elusive nature of discrimination." *Vega*, 81 F.3d at 87. Indeed, "[b]ecause discrimination claims implicate an employer's usually unstated intent and state of mind…rarely is there 'direct smoking gun, evidence of discrimination'." *Id*.; *accord Richards v. N.YC. Bd. of Educ.*, 668 F. Supp. 259, 265 (S.D.N.Y. 1987); *aff'd* 842 F.2d 1288 (2d Cir. 1988). Thus, it is well-recognized that plaintiffs "usually must rely on 'bits and pieces' of information to support an inference of discrimination, *i.e*., a 'mosaic' of intentional discrimination." *Vega*, 801 F.3d at 86 (internal citations omitted). At this early stage in litigation, the plaintiff's burden is minimal, requiring that plaintiff allege only "enough to nudge their claims across the line from conceivable to plausible." *Id*. at 86-87.

Here, plaintiff has not set forth direct evidence of race discrimination with respect to defendant's failure to promote her to the assistant manager position. Plaintiff does not allege that she was subjected to racially invidious comments or insults, nor does plaintiff allege that an individual outside of her protected class was awarded the position instead of her. However, the amended complaint does allege that a Caucasian employee was permitted to sit down at the register while working but that plaintiff was denied the same

benefit. Thus, plaintiff has alleged at least one instance where an employee not within her protected group was given preferential treatment. Moreover, plaintiff's handwritten complaint, which is not entirely easy to understand, contains myriad examples of generally negative treatment she suffered while employed by defendant. Admittedly, plaintiff does not expressly state how these incidents were connected to her race or to the denial of her request for promotion. However, the Court can infer, based on a commonsense reading of the amended complaint, that plaintiff is attempting to allege a sequence of events at or around the time she was denied promotion that suggest discriminatory animus on the part of defendant. For example, plaintiff alleges that during the same month she was denied promotion, she brought in a doctor's note regarding her allergies. She contends that Head Manager Laury, the same decision-maker who purportedly rejected her inquiries about the assistant manager position, also refused to provide her with necessary information in conjunction with this doctor's note and her alleged health issues. Plaintiff alleges that two Caucasian employees, including the Caucasian employee who was permitted to sit at the register while plaintiff was made to stand, ordered plaintiff to do both their work and her own work. Plaintiff alleges that an assistant manager made generally threatening comments to her. She also alleges that she was "set up" by defendant when she was unfairly blamed for money missing from her cash drawer, even though it was known to defendant that the missing money was attributable to another employee or individual. Interpreting plaintiff's amended complaint to raise the strongest arguments it suggests and drawing all reasonable inferences in plaintiff's favor, plaintiff seems to contend that this repeated negative and undeserved

treatment, considered in totality, demonstrates that the failure to promote her was due to her race rather than a legitimate, non-discriminatory reason.[2]

Because plaintiff does not clearly link much of the alleged negative treatment to her race, it is, admittedly, a close call as to whether her allegations are enough to plead an inference of discrimination. In fact, the Court is doubtful that these allegations would survive a motion for summary judgment, especially after defendant has an opportunity to submit evidence to refute plaintiff's claims of discriminatory intent. However, on a motion to dismiss, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination." *Vega*, 801 F.3d at 72. Moreover, at the 12(b)(6) stage of a Title VII suit, "a minimal plausible inference of discriminatory intent" entitles a plaintiff to the "temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its actions against the plaintiff." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). To that end, the Court of Appeals for the Second Circuit has "often vacated 12(b)(6) and 12(c) dismissals of complaints alleging discrimination" and has "cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." *Id*. at 55 n. 8.

In accordance with Second Circuit precedent, the Court finds that plaintiff provides enough "bit and pieces" of information to minimally state a "mosaic of discrimination." As noted above, plaintiff has alleged at least one incident, seemingly around the time she

---

[2] The Court acknowledges that portions of the amended complaint seem to label some of these incidents as "sexual harassment" or "national origin discrimination" or "disability discrimination." However, considering plaintiff's *pro se* status, and upon reviewing the amended complaint in totality and in a commonsense manner, it appears to the Court that plaintiff is attempting to use all of these alleged examples as indicative of, *inter alia*, discriminatory animus on account of race.

was denied promotion, where an employee outside of her protected class was given preferential treatment. She has also alleged a sequence of additional events, during and around the time of the failure to promote, where she was treated negatively and unfairly, including that Caucasian employees ordered her to do their work and that Head Manager Laury, the same individual who denied her requests for promotion, refused to give her necessary information after she brought in a doctor's note. She claims that she had to endure threatening comments and an attempt to "set her up" for, presumably, discipline or termination. Moreover, plaintiff alleges that even though she was well-qualified for the assistant manager position, Head Manager Laury would not even permit her to apply. After considering these allegations in totality, and in light of the preliminary stage of the litigation as well as plaintiff's *pro se* status, the Court finds that plaintiff has pled sufficient facts to establish at least *minimal* support for the proposition that the decision not to promote her was motivated by discriminatory intent. *See Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 612-13 (D. Conn. Feb. 9, 2021) (physician's allegations that her supervisor refused to assist with scheduling her research, failed to notify her that she had insufficient credits to receive her full salary on maternity leave, and unfairly told her she had performance issues, were actions "all taken in quick succession after he learned of her pregnancy" and thus created "an inference of discrimination substantial enough to survive a motion to dismiss"); *Klein v. Brookhaven Health Care Facility*, CV 17-4841, 2019 U.S. Dist. LEXIS 39745 (E.D.N.Y. Mar. 11, 2019) ("Notwithstanding the weakness of his pleadings in certain respects – and construing [*pro se*] Plaintiff's factual allegations in the light most favorable and drawing all reasonable inferences in his favor – the Court finds that Plaintiff has sufficiently alleged several 'bits and pieces' of information from which,

taken together, Plaintiff can meet his burden as to the existence of an inference of [age] discrimination", including that he was asked when he was going to retire and that he was terminated for misuse of the company phone despite his denials and without a further investigation); *Howard v. MTA Metro-N. Commuter R.R*., 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (noting that inference of discrimination is a flexible standard that can be satisfied differently in differing factual scenarios); *Dossous v. NYC Health & Hosps*., 19-CV-3098, 2020 U.S. Dist. LEXIS 176932 (E.D.N.Y. Sept. 25, 2020) (*pro se* plaintiff's allegations that he "was terminated as a result of his back injury and that [d]efendant refused to provide any accommodation at work…[a]lthough brief…meet [p]laintiff's 'minimal' burden at the pleading stage as to his discrimination claim based on his termination."). For these reasons, the Court finds that plaintiff can proceed with a Title VII race discrimination claim based upon failure to promote.

However, the same conclusion cannot be reached for plaintiff's claim of national origin discrimination. First, the amended complaint does not identify plaintiff's national origin. Moreover, it contains no allegations that any adverse actions were taken against plaintiff on the basis of her national origin. In her amended complaint, plaintiff alleges that defendant engaged in "nation[al] origin discrimination towards plaintiff by setting plaintiff up, having money taken from a vault in the office, by strange guy climbing into office [and] then blaming the money being missing from plaintiff drawer." However, plaintiff does not allege that she suffered any material changes to her job, such as termination, demotion, or loss of salary or benefits, as a direct result of this incident. *See Granica v. Town of Hamburg*, 237 F. Supp. 3d 60, 75-76 (W.D.N.Y. 2017). Moreover, plaintiff does not explain how this incident was in any way connected with her unidentified national origin.

*See Mazurkiewicz v. New York City Health & Hosp. Corp*., 09 Civ. 5962; 2010 U.S. Dist. LEXIS 107697 (S.D.N.Y. Sept. 16, 2010) (dismissing Title VII claims where plaintiff did not specify the national origin of other employees or put forward facts indicating that any alleged actions by defendants were motivated by animus towards his national origin). Thus, plaintiff's claim of national origin discrimination under Title VII should be dismissed.

Likewise, plaintiff has failed to state a plausible claim of hostile work environment discrimination under Title VII. To state a hostile work environment claim under Title VII, a plaintiff must allege that "(1) the workplace was permeated with discriminatory harassment or intimidation that was sufficiently severe or pervasive to alter the conditions of her working environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Risco v. McHugh*, 868 F. Supp. 2d 75, 115 (S.D.N.Y. 2012); *accord Mack v. Otis Elevator Co*., 326 F.3d 116, 122 (2d Cir. 2003). In determining whether a hostile work environment claim exists, courts must look at the "totality of the circumstances." *Terry*, 336 F.3d at 148; *quoting Richardson v. N.Y. State Correctional Serv*., 180 F.3d 426, 437-38 (2d Cir. 1999)). Among the factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148; *quoting Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23, (1993)). Incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc*., 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks and citations omitted).

Portions of the amended complaint are, admittedly, difficult to understand. However, in support of her hostile work environment claim, plaintiff seems to allege that Theresa, an assistant manager at Dollar Tree, made comments to plaintiff which involved threats of assault. Plaintiff also alleges that Theresa brought her "partner", who is a "member of a SWAT team", to the Dollar Tree store and "pointed out" plaintiff. Plaintiff contends that these incidents constituted sexual harassment. However, these allegations do not meet the high bar of the "severe and pervasive" standard nor do they constitute a "continuous" campaign of harassment. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."); *Kilgannon v. SSA*, 20-CV-01891, 2021 U.S. Dist. LEXIS (S.D.N.Y. Sept. 30, 2021) (allegations that co-worker made threatening comments to plaintiff, including that she knew where plaintiff lived and had a weapon, did not constitute severe behavior sufficient to state a claim for hostile work environment).

Moreover, even assuming plaintiff's allegations showed a sufficiently abusive working environment, there are no facts alleged which directly connect these comments to plaintiff's protected classification. This lack of connection is fatal to plaintiff's claim. *Alfano*, 294 F. 3d at 374. *See e.g., Foster v. Humane Soc'y of Rochester & Monroe County, Inc.,* 724 F. Supp. 2d 382 (W.D.N.Y. July 21, 2010) ("The most significant flaw in [plaintiff's hostile work environment] claim…is that plaintiff's allegations do not indicate that her gender was causally related to the hostility that she faced.")*; Gong v. City Univ. of N.Y.*, 846 Fed. Appx. 6, 2021 U.S. App. LEXIS 3355 (2d Cir. 2021) (affirming district

court's dismissal of plaintiff's hostile work environment claim pursuant to Rule 12(b)(6), because her allegations were "too mild and episodic" to support her claim, and they lacked any racial overtone); *Sotolongo v. New York State Dep't of Motor Vehicles*, 19-cv-3282, 2020 U.S. Dist. LEXIS 131033, at *13 (E.D.N.Y. July 24, 2020) ("[C]rucially, Sotolongo fails to allege that the treatment of which she complains was connected in any way to her protected status, which is fatal to her hostile work environment claim."); *Peay v. Admin. for Children's Servs.*, 17-CV-4562, 2018 U.S. Dist. LEXIS 89256 (S.D.N.Y. May 29, 2018) (dismissing hostile work environment claim based on gender and age because "plaintiff did not plead any facts attempting to connect her allegedly hostile work environment to either of those two characteristics"). Accordingly, plaintiff's hostile work environment claim should be dismissed.

### *Plaintiff's ADEA Claims*

In order to establish a *prima facie* claim of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), a plaintiff must show (1) that she was within the protected age group (those over 40); (2) that she was qualified for the position; (3) that she experienced an adverse employment action; and (4) that such adverse action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski*, 596 F.3d at 107. With respect to the element of causation, the plaintiff must establish, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009), and not simply a "contributing or motivating factor." *Gorzynski*, 596 F.3d at 106.

Plaintiff alleges that she is 59 years old and therefore within the class of individuals protected by the ADEA. As noted above, plaintiff sufficiently alleges that she was qualified

for the positions at issue and that suffered an adverse employment action when defendant failed to promote her to assistant manager. However, the amended complaint is devoid of any allegation suggesting either an inference of age discrimination, or that plaintiff's age was the but-for reason she was denied the assistant manager position. The amended complaint does not allege that the position was given to a younger employer. Moreover, there are no allegations of invidious comments based on age or more favorable treatment of younger employees. Plaintiff alleges that Barb, another employee of defendant, was permitted to sit while working at the cash register, while plaintiff was not. However, there is no allegation in the amended complaint that Barb was under 40 years old, or even that she was younger than plaintiff. In fact, the amended complaint refers to Barb as a "retiree", suggesting instead that Barb was over the age of 40 and, like plaintiff, was protected by the ADEA. Moreover, the amended complaint acknowledges that plaintiff was 59 years old at the time of her hire. "Although the ADEA does not necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when first hired, this substantially weakens any inference of discrimination on [d]defendant's part." *Sires v. Metlife Grp., Inc.*, 18-CV-4464, 2019 U.S. Dist. LEXIS 160181 (S.D.N.Y. Sept. 18, 2019).

An employment discrimination plaintiff must "assert enough non-conclusory factual matter to nudge her claim[s] across the line from conceivable to plausible." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (internal citations omitted). Because the amended complaint fails to allege that plaintiff suffered an adverse employment action under circumstances which plausibly give rise to an inference of age discrimination, her ADEA claim should be dismissed. *See Staten v. City of New York*, 14 Civ. 4307, 2015 U.S. Dist. LEXIS 94634 (S.D.N.Y. July 20, 2015) (motion to dismiss age discrimination

claim granted where plaintiff offered "no factual support for his assertion that he was overlooked for a promotion because of his age.").[3]

*Plaintiff's ADA Claims*

To establish a *prima facie* claim of disability discrimination under the Americans with Disabilities Act ("ADA"), a plaintiff must allege "(1) his [or her] employer is subject to the ADA; (2) he [or she] was disabled within the meaning of the ADA; (3) he [or she] was otherwise qualified to perform to perform the essential functions of his [or her] job, with or without reasonable accommodation; and (4) he [or she] suffered adverse employment action because of his [or her] disability." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 248 (S.D.N.Y. 2015); *accord Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual…a record of such an impairment; or…being regarded as having such an impairment." 42 U.S.C. §12102(1). In order to survive a motion to dismiss, "a plaintiff [must] do more than simply allude to her impairments in her pleadings; she must plead how those impairments significantly impacted major life activities." *Collins v. Giving Back Fund*, 18 Civ. 8812, 2019 U.S. Dist.

---

[3] To the extent plaintiff is attempting to base her age discrimination claim on allegations that defendant refused to allow her to sit while working at the cash register, her claim also fails. To begin, denying an employee's request to sit while engaging in a particular job duty does not constitute an adverse employment action. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (A plaintiff suffers an adverse employment action if she endures "a materially adverse change" in the terms and conditions of employment, something "more disruptive than a mere inconvenience or an alteration of job responsibilities" such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."). Moreover, as explained *infra*, there are no allegations here that younger employers were permitted to sit while plaintiff was required to stand. Thus, there is no plausible inference of age discrimination.

LEXIS 132088 (S.D.N.Y. Aug. 6, 2019). Here, plaintiff's allegations of disability discrimination fall short of these requirements.

First, plaintiff fails to plead that she is a disabled person within the meaning of the ADA. The amended complaint alleges that plaintiff gave Head Manager Laury a doctor's note indicating that she is "allergic to chemicals." Plaintiff does not say—or include any facts from which the Court can infer—that this diagnosis substantially limits her ability to perform any major life activities. Indeed, she has not even hinted as to how this condition affects her or her ability to work. Plaintiff also alleges that she was not permitted to sit while working at the register. However, plaintiff does not identify any disability she suffers from which prevents her from standing, or that otherwise requires her to sit while performing this aspect of her job duties. Moreover, plaintiff does not explain how any such purported disability substantially limits her ability to perform major life activities. Because the amended complaint does not state that plaintiff suffers from any disability within the meaning of the ADA, plaintiff's ADA claim cannot proceed. *See Sayers v. Niagara Falls City Sch. Dist.*, 20-CV-703, 2022 U.S. Dist. LEXIS 41190 (W.D.N.Y. Mar. 8, 2022) (where plaintiff stated only that she "has a disability" and that she "has PTSD" but did not include any facts as to how her PTSD substantially limited her ability to perform major life activities, she did not plead that she suffered from a disability within the meaning of the ADA); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394 (E.D.N.Y. 2010) (plaintiff failed to plead disability claim because complaint did not properly allege any "substantial physical limitations"); *Giallanza v. Time Warner Cable*, 07-CV-6050, 2009 U.S. Dist. LEXIS 27086 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well-settled under federal law that the ADA

requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act.").[4]

Plaintiff's disability discrimination claim also fails because the complaint is devoid of allegations indicating that plaintiff suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination. Plaintiff alleges that when she gave Head Manager Laury a doctor's report stating that she is allergic to chemicals, Laury refused to provide her with "disability information." Plaintiff does not explain what type of information she is referring to or why she needed it, nor does she contend that she suffered any adverse employment action as a result of defendant's refusal to provide this unspecified information. Moreover, while plaintiff alleges that defendant did not permit her to sit while working at the register, the amended complaint is devoid of any allegations that this refusal resulted in a material change to the terms and conditions of plaintiff's employment with Dollar Tree. *See Davis v. N.Y. City Dep't of Educ.*, 10-CV-8412, 2014 U.S. Dist. LEXIS 30784 (E.D.N.Y. Mar. 7, 2014) (An adverse employment action for the purpose of a discrimination claim under the ADA is a "materially adverse change" in the "terms and conditions of employment.").

As noted above, the amended complaint alleges that plaintiff suffered an adverse employment action when defendant failed to promote her to the position of assistant

---

[4] Plaintiff also has not pleaded a "record" of disabling impairment. To show a record of impairment, a plaintiff must establish that she "has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Nor has plaintiff alleged that defendant regarded her as having a disability. To adequately plead that she was "regarded as having" a disability, 42 U.S.C. § 12102(3), a plaintiff "must allege that [s]he has been subjected to an action prohibited by the ADA…because of an actual or perceived impairment that is not both transitory and minor." *See Rodriguez v. Verizon Telecom*, 13-CV-6969, 2014 U.S. Dist. LEXIS 167833 (W.D.N.Y. Dec. 3, 2014). Plaintiff does not make any such allegations here.

manager. However, plaintiff does not allege any facts which would suggest an inference of disability discrimination surrounding this decision. Plaintiff does not allege that a non-disabled person was hired for the assistant manager person. The complaint also lacks any allegations suggesting that plaintiff was denied the position because of an unspecified disability. Indeed, plaintiff does not claim that she was subjected to derogatory comments as a result of any purported disability nor does she claim that any non-disabled employees received more favorable treatment than she did. *See O'Connor v. N.Y. State Dep't of Fin. Servs.*, 1:21-CV-00828; 2022 U.S. Dist. LEXIS 157933 (N.D.N.Y. Sept. 1, 2022) ("These 'naked' assertions' of discriminatory treatment, unaccompanied by any concrete facts, do not allow a plausible inference of discrimination because of disability."); *Moore v. City of New York*, 15-CV-6600, 2017 U.S. Dist. LEXIS 379 (SDNY Jan. 3, 2017) (where plaintiff "did not plead a single fact about individual comparators or other specific evidence of disparate treatment…[his] pleadings fail[ed] to raise his ADA claims beyond the level of speculation and cannot support a plausible inference of disability discrimination in order to survive a motion to dismiss.").

In order to state a failure-to-accommodate claim under the ADA, a plaintiff must allege "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations." *Clark,* 96 F. Supp. 3d at 250 (quotations omitted).

Plaintiff has not successfully asserted a failure to accommodate claim based on defendant's purported refusal allow plaintiff to sit while working at the register. First, for

all the reasons explained above, plaintiff has failed to allege that she is a person with a disability under the meaning of the ADA. *See Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled."). Likewise, there are no allegations in the complaint to suggest that defendant had notice of any disability which required plaintiff to sit while working at the register. Indeed, an employee must demonstrate that she suffers from a disability *and* tell her employer about her disability before her employer has "any obligation to accommodate the disability." *Santiago v. New York City Police Dep't*, 05 Civ. 3035, 2007 U.S. Dist. LEXIS (S.D.N.Y. Dec. 14, 2007). The amended complaint contains no allegations suggesting that this is what occurred here. *See Macentee v. IBM*, 783 F. Supp. 2d 434 (S.D.N.Y. Mar. 1, 2011) (dismissal of ADA failure to accommodate claim, in part, because plaintiff failed to indicate that her employer had knowledge of any disability-related reason for her transfer request); *Piccolo v. Wal-Mart*, 11-CV-406, 2012 U.S. Dist. LEXIS 75991 (W.D.N.Y. May 30, 2021) (employer's knowledge of employee's symptoms of back and leg pain were insufficient to show that employer knew the employee suffered from a disability) Thus, the amended complaint does not adequately state a failure to accommodate claim under the ADA.[5]

---

[5] To the extent that plaintiff is attempting to assert a failure to accommodate claim based upon allegations that she gave Head Manager Laury a doctor's note stating that she is allergic to chemicals, her claim is also insufficient. Plaintiff has not established that she suffers from a disability under the Act with regard to this condition, and the complaint is devoid of any allegations that plaintiff requested an accommodation based upon her allergy to chemicals. *See Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 407 (S.D.N.Y. 2007) ("It is settled that an employee cannot hold an employer liable for failing to provide an accommodation that the employee has not requested in the first place.")

_Ability to Replead Dismiss Claims_

In sum, it is recommended that plaintiff be permitted to proceed with her Title VII race discrimination claim based on failure to promote, and that all other claims in the amended complaint be dismissed. The Court previously identified the deficiencies of the complaint and gave plaintiff an opportunity to replead. With the exception of plaintiff's race discrimination claim, the amended complaint does not correct the deficiencies of the original complaint and there is no indication that further amendment would be successful. Thus, it is recommended that the insufficient claims be dismissed with prejudice. _See Alsaifullah v. Travis_, 160 F. Supp. 2d 417, 421 (E.D.N.Y. 2001) ("[A]s the Amended Complaint, by definition, provided plaintiff a second chance to sufficiently plead the facts supporting this action, the court will not permit Plaintiff to replead again."); _Herbert v. Delta Airlines_, 12 CV 01250, 2014 U.S. Dist. LEXIS 140320 (E.D.N.Y. Sept. 26, 2014) (denying _pro se_ plaintiff leave to amend where amended complaint failed to correct the deficiencies previously identified by the court); _Chandler v. City of New York_, 17-CV-4030, 2018 U.S. Dist. LEXIS 81861 (S.D.N.Y. May 14, 2018) (leave to amend denied where _pro se_ plaintiff was told of the deficiencies of the complaint and given opportunity to replead, and the amended complaint still failed to satisfy those standards).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Dollar Tree Stores, Inc.'s motion to dismiss the complaint be granted in part and denied in part. (Dkt. No. 24) Specifically, it is recommended that defendant's motion to dismiss plaintiff's Title VII race discrimination claim be denied, but that defendant's motion to dismiss all other claims in the amended complaint be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

DATED:        October 27, 2022
              Buffalo, New York


                                        /s/ Michael J. Roemer
                                        HONORABLE MICHAEL J. ROEMER
                                        United States Magistrate Judge